**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Joseph Lathus,

               Plaintiff,

v.

Round Valley Justice Court, et al.,

               Defendants.

No. CV-24-08233-PCT-DWL

**ORDER**

Notwithstanding the premature notice of appeal and blizzard of often repetitive and frivolous motions that *pro se* Plaintiff has recently filed, the Court's task of screening Plaintiff's Second Amended Complaint ("SAC") pursuant to 28 U.S.C. § 1915(e)(2) remains.  Based on that screening, this action is dismissed without leave to amend.

## BACKGROUND

On December 16, 2024, Plaintiff filed the complaint (Doc. 1) and an application for leave to proceed in forma pauperis ("IFP") (Doc. 2), and this case was assigned to Magistrate Judge Metcalf (Doc. 5).

The complaint, which was titled "Complaint for Violations of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983," named only one Defendant—Round Valley Justice Court—in the caption, but the portion of the complaint identifying the "Parties" listed two Defendants: (1) Round Valley Justice Court and (2) "Defendant Judge Butch L. Gunnels," who is alleged to "preside[] over the RVJC."  (Doc. 1 at 2.)

The complaint alleged as follows. Plaintiff underwent "mouth cancer surgery on May 20, 2024," which caused "permanent impairments, including numbness, speech limitations, and pain during prolonged speech." (*Id.* at 3.)  In October 2024, Plaintiff was a defendant in a misdemeanor court proceeding in the Round Valley Justice Court over which Judge Gunnels presided.  (*Id.*)  During this proceeding, "Plaintiff requested legal counsel multiple times, anticipating potential jail time from the misdemeanor charge," but Judge Gunnels denied these requests, which, according to the complaint, violated Plaintiff's constitutional right to legal counsel.  (*Id.*)  "Plaintiff filed motions requesting ADA accommodations, including telephonic appearances and AI speech technology, due to his inability to speak clearly.  (*Id.* at 4.)  A clerk was assigned to read Plaintiff's written notes aloud during trial, but "this failed to fully address Plaintiff's needs, creating significant barriers to participation." (*Id.*)  On December 4, 2024, Judge Gunnels issued a contempt order, finding that Plaintiff "lied to the court about [his] ability to verbally speak" and "attempted to use fraud on [the] court to influence the verdict of [his] trial." (*Id.*)  The contempt finding was based on Judge Gunnels's personal observations and those of court personnel.  (*Id.*)  The complaint asserted that Judge Gunnels lacked jurisdiction to issue a contempt order because, by the time the contempt order issued, "the case was resolved" and Plaintiff had filed an appeal.  (*Id.*)  The complaint asserted claims under Title II of the ADA and Section 504 of the Rehabilitation Act as well as 42 U.S.C. § 1983 claims for denial of due process, equal protection, and the right to counsel, requesting declaratory relief, injunctive relief, and compensatory and punitive damages.  (*Id.* at 5-7.)  The signature line on the complaint was blank.  (*Id.* at 8.)

On December 18, 2024, Judge Metcalf granted the IFP application.  (Doc. 7.)

On January 29, 2025, Judge Metcalf issued an order indicating that Plaintiff named two defendants[1] but submitted only a single summons, which did not identify the defendant

---

[1]    "[T]he question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint.  Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."  *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983).

to be served, and ordered Plaintiff to submit, by February 12, 2025, properly completed service documents for service on each defendant or show cause why the case should not be dismissed for failure to prosecute.  (Doc. 13.)

On February 7, 2025, after the previous order was returned as undeliverable at Plaintiff's mailing address (Doc. 14), Judge Metcalf ordered Plaintiff to file a change of address (Doc. 15), which Plaintiff promptly did.  (Doc. 17.)  Plaintiff did not, however, respond to the January 29, 2025 order.

On February 28, 2025, Judge Metcalf issued a Report & Recommendation ("R&R") to Judge McNamee recommending that the case be dismissed without prejudice for "failure to prosecute with regard to submitting a completed summons and failure to respond to an order to show cause."  (Doc. 19.)

That same day, Plaintiff submitted a summons for Round Valley Justice Court. (Doc. 20.)  The summons issued.  (Doc. 21.)

Also that same day, Plaintiff filed a document titled "Complaint for Violations of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983"—a document which included a statement of the case, allegations regarding jurisdiction and venue, allegations establishing the parties, factual allegations setting forth a narrative of relevant acts and events, legal claims set forth as numbered counts, and statements regarding the relief requested.  (Doc. 22.)  This document appears to be identical to the originally filed complaint (Doc. 1), except that this newly filed document was signed. (Doc. 22 at 8.)

A "staff notes" entry on the docket indicates that Plaintiff also submitted a summons for Butch Gunnels, but the summons was returned because the "name does not match complaint."[2]

On March 3, 2025, Plaintiff filed a motion seeking service of process (Doc. 24) and a motion for "immediate issuance of summons" (Doc. 25).

On March 5 and 6, 2025, Judge Metcalf issued four orders.  (Docs. 26-29.)  The first

---

[2]    This was an error on the part of the court staff.  *See supra* note 1.

order construed the document filed at Doc. 22 as "an amended complaint" made as "a matter of course," set a deadline for filing the notice required by LRCiv 15.1(b), and ordered the Clerk not to "issue any additional summonses in this case until further order of the Court." (Doc. 26.) The order also noted that the R&R recommending dismissal of the case for failure to prosecute and failure to comply with instructions to submit supplemental service documents "remains pending." (*Id.*) The second order, however—apparently responding to Plaintiff's obtaining of a summons as to Round Valley Justice Court on February 28, 2025 (Docs. 20, 21)—withdrew the R&R. (Doc. 27.) In the third order, Judge Metcalf considered Plaintiff's request for service via the U.S. Marshal (Doc. 24) and stated that he would "not at this juncture direct service for two reasons": (1) he had not yet completed his review of the "First Amended Complaint" pursuant to 28 U.S.C. § 1915, and (2) "Plaintiff has not provided the Clerk with properly completed service documents." (Doc. 28.) Finally, the fourth order "granted" Plaintiff's motion for summons (Doc. 25) but did not direct the Clerk to issue any summons—rather, the order reiterated that Judge Metcalf did not intend to provide Plaintiff with service packets and order service by the U.S. Marshal until after completing a § 1915 screening. (Doc. 29.)

On March 7, 2025, Plaintiff filed an objection to the R&R (Doc. 30), even though it had already been *sua sponte* withdrawn two days earlier (Doc. 27).

On March 10, 2025, Judge Metcalf issued a § 1915 screening order, directing Plaintiff to show cause why the "First Amended Complaint" should not be dismissed due to, *inter alia*, judicial immunity and Round Valley Justice Court being a non-jural entity and at any rate not liable under § 1983 on a *respondeat superior* theory. (Doc. 31.)

On March 11, 2025, notwithstanding Judge Metcalf's March 5, 2025 order that "[t]he Clerk must not issue any additional summonses in this case until further order of the Court" (Doc. 26 at 2), the Clerk issued a summons for Judge Gunnels and mailed it to Plaintiff. (Doc. 33.)

On March 13, 2025, Plaintiff filed a document titled "Supplemental Filing: Notice of Due Process & Double Jeopardy Violations in Sentencing," which attempted to add

allegations regarding Judge Gunnels's conduct in October 2024 and legal claims based on that conduct.  (Doc. 34.)  An identical document was refiled the following day.  (Doc. 36.) Judge Metcalf construed the filing as an unauthorized attempt to amend the complaint and struck it.  (Doc. 40.)

On March 14, 2025, Plaintiff filed a response to the March 10, 2025 order to show cause ("OSC"), defending the "First Amended Complaint" on the merits.  (Doc. 35.)[3]

That same day, Plaintiff filed an objection to the OSC, arguing that Judge Metcalf had already authorized service of process and that a *sua sponte* dismissal order based on the validity of the claims would be "premature."  (Doc. 37.)[4]

Also on that same day, Plaintiff filed a "supplemental response" to the OSC in which he claimed (inaccurately) that he "did not originally name [Judge] Butch Gunnels as a Defendant in his lawsuit" and that the "Sandra Day O'Connor U.S. Courthouse added [Judge] Butch Gunnels as a Defendant after the lawsuit was filed," which Plaintiff took as somehow "demonstrating" Judge Gunnels's "culpability."  (Doc. 38.)

On March 17, 2025, Plaintiff filed a "Motion to Reinstate Original Complaint and Objection to Court's Order Construing Motion As First Amended Complaint."  (Doc. 39.)[5] Instead of acknowledging that the document filed at Doc. 22 was merely a signed version of the original unsigned complaint, Plaintiff asserted that this filing was "a motion"—not for Judge Metcalf, but for courthouse staff, seemingly suggesting that his speech impairments were not being accommodated.  (*Id.*)  Plaintiff stated that his "original complaint . . . contains the full scope of his claims, properly structured and supported" and objected to "any forced amendment of his claims."  (*Id.*)

On March 19, 2025, Plaintiff filed a "Motion to Supplement Record with Additional Legal Arguments on Judge Gunnels' Lack of Jurisdiction."  (Doc. 43.)

---

[3]    This response to the OSC was refiled at Doc. 41.

[4]    In fact, Judge Metcalf had not already authorized service of process, and § 1915 specifically authorizes a *sua sponte* order dismissing based on the validity of the claims in IFP actions.

[5]    The motion was refiled at Doc. 42.

On March 20, 2025, Plaintiff filed documents entitled "Supplemental Brief in Support of Injunctive Relief" (Doc. 44), "Argument: Judge Butch L. Gunnels Lost Judicial Immunity" (Doc. 45), and "Proposed Order Granting Plaintiff's Motion for Injunctive Relief" (Doc. 46), as well as a proof of service purporting to establish that Round Valley Justice Court was served on March 17, 2025 (Doc. 47).

On March 24, 2025, Plaintiff filed a motion seeking an injunction prohibiting Defendants from, *inter alia*, "[i]nitiating or continuing any criminal proceedings against Plaintiff" or attempting to serve Plaintiff "outside of their jurisdiction." (Doc. 55.)

On March 25, 2025, Judge Metcalf issued five orders. (Docs. 49-53.) The first order noted that the original complaint (Doc. 1) was unsigned and that the version of the complaint filed on February 28, 2025, which had been previously construed as a "First Amended Complaint" (Doc. 22), was simply a signed version of the original complaint. (Doc. 49 at 1.) Nevertheless, Judge Metcalf granted Plaintiff's motion to make the original, unsigned version the operative complaint and ordered Plaintiff to file a certification that could be deemed a signature on the original complaint. (*Id.* at 2-3.)[6] Moreover, Judge Metcalf vacated his March 10, 2025 order screening the signed version of the complaint pursuant to § 1915 (Doc. 31), leaving the unsigned-but-soon-to-be-certified complaint to be subject to a future screening order. (Doc. 49 at 3.)

The second March 25, 2025 order discussed why Plaintiff's responses and challenges to the March 10, 2025 OSC/screening order failed. (Doc. 50.) Judge Metcalf also struck Plaintiff's response to the OSC (Doc. 35), the duplicative filing of that response (Doc. 41), and Plaintiff's filing entitled "Argument: Judge Butch L. Gunnels Lost Judicial Immunity" (Doc. 45). (Doc. 50 at 3-4.)

The third March 25, 2025 order was a new OSC/§ 1915 screening order, identical to the vacated one, except that this order screened the unsigned version of the complaint. (Doc. 51.) The new order solicited a response from Plaintiff, due April 8, 2025. (*Id.*)

---

[6]     The later-filed, duplicative motion (Doc. 42) was granted. The following day, Judge Metcalf issued another order denying the original motion (Doc. 39) as moot. (Doc. 54.)

The fourth March 25, 2025 order struck Plaintiff's filing entitled "Supplemental Brief in Support of Injunctive Relief" (Doc. 44), noting that "[t]he Court is not a referee at a tennis match, conscripted to watch every back and forth movement" on the docket and that "the filing of such random notices risks the Court and parties overlooking requests for court action (which are properly captioned as motions), and wastes time ferreting through such notices looking for motions." (Doc. 52.)

The fifth March 25, 2025 order struck Plaintiff's proof of service as to Round Valley Justice Court (Doc. 47) as insufficient under the Federal Rules of Civil Procedure. (Doc. 53).

On March 31, 2025, Judge Metcalf issued an order stating that although he previously determined that the § 1915 screening process should be completed before service via the U.S. Marshal was ordered, he had changed his mind and "determined that in the interim service should proceed." (Doc. 56.) Thus, Judge Metcalf ordered the Clerk to send Plaintiff service packets and ordered that once Plaintiff returned the service packets, the U.S. Marshal must request waivers of service from Defendants and then, if either Defendant did not return the waiver form, the U.S. Marshal must personally serve Defendants. (*Id.*)

The following day, April 1, 2025, Judge Metcalf issued another OSC under the aegis of § 1915, this one ordering Plaintiff to show cause why his claims should not be dismissed or stayed under *Younger* abstention. (Doc. 57.) This order also denied without prejudice Plaintiff's request for injunctive relief. (*Id.*)

On April 9, 2025, Plaintiff filed a response to the refiled-original OSC/§ 1915 screening order (Doc. 64) and a response to the OSC/§ 1915 regarding *Younger* abstention (Doc. 65).

In early May 2025, Plaintiff filed a motion to amend the complaint (Doc. 71), which was denied without prejudice due to failure to adhere to LRCiv 15.1 (Doc. 76); a motion to refer Judge Gunnels to a criminal prosecutor (Doc. 72), which was also denied without prejudice (Doc. 77); a notice of service of discovery (Doc. 73), which was stricken as

premature and improperly filed (Doc. 74); and a variety of notices advancing legal arguments (Docs. 78, 79, 80, 84, 85), some of which were stricken (Doc. 83).

On May 8, 2025, Judge Metcalf ordered Plaintiff "to either: (a) return the separate certification required by the Order filed March 25, 2025 (Doc. 50); or (b) file a response to this Order showing cause why the Complaint should not be stricken pursuant to Fed. R. Civ. Proc. 11(a), and the case dismissed for failure to prosecute." (Doc. 81.)

On May 12, 2025, Plaintiff filed the certification. (Doc. 87.)

On May 15, 2025, Plaintiff filed a motion for leave to file a supplementary declaration (Doc. 88) and motion for a temporary restraining order ("TRO") and preliminary injunction (Doc. 89), both of which were denied (Docs. 92, 96).

On May 19, 2025, Plaintiff filed a "Motion [for] Leave to File Second Amended Complaint" (Doc. 93)[7] and lodged the proposed new pleading (Doc. 94). The proposed new pleading adds three new Defendants—Round Valley Justice Court Clerk Alana Castillo, the Apache County Sheriff's Office ("ACSO"), and ACSO Officer Thomas Pacl—and adds background facts about the court proceedings at the Round Valley Justice Court, in which Plaintiff had been "personally funding gravel improvements" for roads "near his property," despite having been issued "verbal warnings" that he was "obstructing a public thoroughfare," and was eventually given a misdemeanor citation when he failed to heed the warnings and cease his road-improving activities. (*Id.*)

On June 5, 2025, Plaintiff filed proof of service as to Judge Gunnels (Doc. 100) and Round Valley Justice Court (Doc. 101).

On June 23, 2025, Judge Gunnels and Round Valley Justice Court appeared via counsel and filed a motion seeking "clarification of the status of the case and their obligations to respond." (Doc. 102.) Noting that (1) the original complaint appeared to be the operative complaint, (2) Judge Metcalf had begun a screening process indicating that the complaint was subject to dismissal on various grounds and had solicited responses from

---

[7]    This characterization was in tension with Plaintiff's previous insistence that he had never filed a First Amended Complaint.

Plaintiff but never completed the § 1915 screening process, and (3) a motion to amend was pending, Defendants expressed uncertainty as to whether they were required to respond to the complaint.  (*Id.*)  Defendants requested an order either extending the deadline to respond until after a ruling on the pending OSCs and motion to amend or until ordered by the Court to respond.  (*Id.*)

On June 24, 2025, Judge Metcalf denied Defendants' motion for lack of "good cause" and set a July 7, 2025 deadline for Defendants to respond to the complaint—and further ordered them to respond to the motion to amend and file briefs indicating their position on both of the OSC/§ 1915 orders by July 14, 2025.  (Doc. 105.)

On June 24, 2025, a party declined to consent to magistrate-judge jurisdiction.  (Doc. 106.)  As a result, on June 26, 2025, this case was randomly assigned to the undersigned district judge.  (Doc. 107.)

On June 27, 2025, Plaintiff filed a motion to disqualify defense counsel (Doc. 109), a motion to strike Defendants' already-denied motion for extension of time (Doc. 110), a motion for entry of default (Doc. 11), and two "supplemental" briefs (Docs. 112, 113).

On July 1, 2025, the Court granted Plaintiff's motion for leave to file an amended complaint.  (Doc. 114.)  The amended complaint has been docketed as the "Second Amended Complaint" ("SAC"), and although it is actually the first amended complaint, the Court will refer to it as the SAC for the sake of consistency with the docket and the title Plaintiff assigned to it.  The Court also ordered that "no Defendant named in the SAC need respond to the SAC at this time" and indicated an intention to screen the SAC pursuant to § 1915 before requiring any response from Defendants.  (*Id.*)  The Court also denied Plaintiff's pending motions. (*Id.*)

On July 10, 2025, Plaintiff filed a pair of motions that sought to hold Defendants in default for failing to respond.  (Docs. 116, 117.)  In a July 11, 2025 order, the Court denied those motions in light of the clarification in the July 1, 2025 order that no response from Defendants was required pending screening.  (Doc. 118.)

On July 14, 2025, Plaintiff filed seven additional motions: two motions seeking the

undersigned judge's recusal (Docs. 119, 120), a "motion to preserve evidence of judicial misconduct, favoritism, and potential conspiracy" (Doc. 121), a motion to "confirm entry of default" and authorize the service of Plaintiff's most recent complaint (Doc. 122), two motions for default judgment (Docs. 123, 125), and a "motion to issue order to show cause under Rule 16(f) for Defendants' failure to comply with mandatory scheduling order" (Doc. 124). Additionally, Plaintiff filed a "Notice of Systematic Procedural Violations by Defendants and Failure to Enforce Mandatory Rules of Federal Civil Procedure" (Doc. 126) and a document entitled "Let the Record Show" (Doc. 127).

On July 16, 2025, the Court denied the seven motions, noting that the recusal request based solely on "Plaintiff's disagreement with the Court's rulings" was frivolous, the recusal request likening the Court's ruling staying the case pending a § 1915 screening to "Nazi Germany" failed to provide "fair support" of bias, and the many requests for entry of default and default judgment ignored the fact that Defendants were not in default, as the Court had "already explained." (Doc. 128.) The Court also advised Plaintiff that continued filing of frivolous motions and other filings "place him at risk of sanctions." (*Id.* at 4.)

Between July 21-23, 2025, Plaintiff filed three additional motions and three additional notices. (Docs. 129, 130, 131, 132, 133, 134.) The first motion purports to be a Rule 60(b) motion seeking relief from the Court's order denying Plaintiff's motions for default judgment. (Doc. 129.) The second motion is yet another motion for default judgment. (Doc. 130.) The third motion is yet another recusal motion. (Doc. 131.) This third recusal motion is based on Plaintiff's belief that the Court should have granted his default judgment motions. (*Id.*) The notices state that the Court's decision to stay deadlines pending a § 1915 screening "can only be characterized as a complete breakdown of lawful procedure" and demonstrates that "there is no longer rule of law in the United States" (Doc. 132), accuse the Court of engaging in prohibited *ex parte* communications with defense counsel, an accusation apparently based on Defendants' "total silence" (Doc. 133), and warn that Plaintiff "will not stop until justice is restored," threatening the Court with a lawsuit "in your personal capacity" unless the Court reverses certain rulings (Doc.

134).  The last filing further admonishes the Court to "[u]phold the law—or become an Exhibit in the most important civil rights case Arizona has ever seen."  (*Id.* at 6.)

Between July 28-31, 2025, Plaintiff filed two affidavits (Docs. 135, 136), a "demand for clarification or entry of default" (Doc. 137), a "notice" again complaining about the Court's decision to stay Defendants' deadline to respond to the SAC pending § 1915 screening (Doc. 138), and a "notice" asserting that all of Plaintiff's filings were "made in good faith" and "not presented for any improper purpose" (Doc. 139).

Finally, on August 11, 2025, Plaintiff filed six more motions: (1) a motion for sanctions against defense counsel (Doc. 140); (2) a motion "to vacate all improper ultra vires actions taken in this matter . . . on the grounds of fraud on the court" (Doc. 141); (3) yet another motion for entry of default (Doc. 142); (4) yet another motion for injunctive relief (Doc. 143); (5) yet another recusal request (Doc. 147); and (6) a motion to reinstate the original complaint as the controlling pleading (Doc. 148).  Additionally, Plaintiff filed a notice of appeal.  (Doc. 144.)  The docket indicates that Plaintiff has also filed a petition for a writ of mandamus and/or prohibition directly with the Ninth Circuit.  (Doc. 145.)

**RELATED CASES**

I.    *Concholakeland*

On May 13, 2024—approximately seven months before this action was filed—Plaintiff filed the complaint in *Concholakeland Homeowners Association et al v. Apache, County of et al*, 3:24-cv-08093-JAT ("*Concholakeland*").    Although the complaint identified the plaintiff in that action as "Concholakeland Homeowners Association, Joseph Lathus," it was signed only by Plaintiff.  (*Concholakeland*, Doc. 1.)  Judge Teilborg dismissed the complaint *sua sponte* pursuant to § 1915 (*Concholakeland*, Doc. 6), and Plaintiff filed an amended complaint, naming himself (and not the Concholakeland HOA) as the sole plaintiff.  (*Concholakeland*, Doc. 7.)  The defendants in *Concholakeland* included, *inter alia*, Round Valley Justice Court, Judge Gunnels, another judge, a clerk of court, Apache County, ACSO, and Apache County Engineer Ferrin Crosby. (*Concholakeland*, Docs. 1, 7.)

Plaintiff filed various motions, including a motion to remove a state-court criminal proceeding in which he was the defendant. (*Concholakeland*, Doc. 12.) On June 21, 2024, Judge Teilborg granted Plaintiff's IFP application, screened the amended complaint pursuant to § 1915, and dismissed the amended complaint without leave to amend. (*Concholakeland*, Doc. 13.) Notably, that action was based on some of the same facts at issue in this action:

> In his amended complaint, Mr. Lathus alleges that he was cited for obstructing a public thoroughfare. Mr. Lathus in suing 11 different Defendants over this citation, arguing that because the thoroughfare he was obstructing was a private road, pursuant to CC&Rs filed with the county, he could not be cited. Mr. Lathus is apparently being prosecuted in state court over this citation, and one of his pending motions is to remove his criminal case to federal court (and presumably consolidate it with this case, though that is unclear).

(*Concholakeland*, Doc. 13.)

In the screening order, Judge Teilborg concluded that the claims against the judges, prosecutor, and clerk of court named as defendants in the amended complaint were barred by judicial immunity, that two other defendants were protected by legislative immunity, that the Apache County Recorder's Office and ACSO were non-jural entities, that the claims against the other defendants lacked any basis in law, and that none of these infirmities could be cured by amendment. (*Id.*)

II.    *RVJC*

On December 12, 2024—four days before this action was filed—Plaintiff filed *Lathus v. Round Valley Justice Court*, 3:24-cv-08231-ROS-ASB ("*RVJC*"). There, Plaintiff sought a writ of mandamus to compel Round Valley Justice Court to "cease pursuing baseless and procedurally improper contempt proceedings" that were initiated after resolution of the misdemeanor criminal case against him. (*RVJC*, Doc. 1.) Judge Silver denied the petition and dismissed the action. (*RVJC*, Doc. 6.)

III.    *Crosby*

On July 14, 2025—two weeks after the SAC was filed in this action—Plaintiff filed *Lathus v. Crosby*, 3:25-cv-08148-CDB ("*Crosby*"). In *Crosby*, Plaintiff sues the Apache

1  County Engineer for executing a "false affidavit" representing that the road Plaintiff had

2  been trying to improve was a "public thoroughfare"—a representation that Plaintiff says

3  resulted in "medical disfigurement" because "Plaintiff's time, emotional capacity, and

4  travel flexibility were consumed with defending himself pro se against unlawful criminal

5  charges," which caused Plaintiff to deprioritize his "suspected oral cancer."  (*Crosby*, Doc.

6  1.)

7  ## DISCUSSION

8  As a preliminary matter, Plaintiff appears to believe the SAC is not the operative

9  complaint because it has not been formally served via a process server.  Plaintiff

10  misunderstands a few basic tenets of civil procedure.  "An amended complaint need only

11  be served in the manner provided by Rule 4 when (1) a party is in default for failure to

12  appear and (2) the pleadings assert new or additional claims for relief."  *Employee Painters'*

13  *Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 999 (9th Cir. 2007) (cleaned up).  Here, the

14  SAC was filed—at Plaintiff's insistence—on July 1, 2025.  (Docs. 114, 115.)  At that time,

15  Judge Gunnels and Round Valley Justice Court were not in default with regard to the

16  original complaint—Judge Metcalf had given them until July 7, 2025 to respond to the

17  original complaint.  (Doc. 105.)  Thus, service of the SAC under Rule 4 was not required

18  as to Judge Gunnels and Round Valley Justice Court—instead, service on those two

19  Defendants could be accomplished via Rule 5.  *Id.*

20  Pursuant to Rule 5(b)(2)(E), service of the SAC on those two Defendants was

21  effective immediately upon the filing of the SAC on the docket on July 1, 2025 (Doc. 115)

22  because those two Defendants' attorneys are registered users with the Court's electronic-

23  filing system.  *See also* Fed. R. Civ. P. 5(b)(1) ("If a party is represented by an attorney,

24  service under this rule must be made on the attorney unless the court orders service on the

25  party.").  At that point, the original complaint became non-existent.  *Ramirez v. Cnty. of*

26  *San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint

27  supersedes the original, the latter being treated thereafter as non-existent.  In other words,

28  the original pleading no longer performs any function.  Consequently, the Plaintiff's

Second Amended Complaint superseded the First Amended Complaint, and the First Amended Complaint ceased to exist.") (cleaned up).  Because the complaint no longer exists, Judge Metcalf's orders initiating (but not resolving) a process of screening that complaint pursuant to § 1915 became moot, and therefore his order that Defendants file briefs to aid in that screening process also became moot.  The filing of the SAC also mooted Judge Metcalf's order requiring Defendants respond to the original complaint (which order the Court had, at any rate, stayed in the July 1, 2025 order).

Furthermore, § 1915(e)(2) authorizes the Court to screen the operative complaint of a plaintiff who is proceeding IFP[8] "at any time."  These screenings often happen before any defendant is participating in the action.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) ("[A] litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.  To prevent such abusive or captious litigation, § 1915(d) authorizes federal courts to dismiss a claim filed *in forma pauperis* 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'  Dismissals on these grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.").  Plaintiff should be familiar with these *sua sponte* screenings, as his complaints in other cases have been dismissed pursuant to them.  *Concholakeland*, Docs. 7, 13; *Lathus et al v. Navajo, County of et al*, 3:22-cv-08111-SMB, Doc. 21.

Finally, "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  In light of the existence of several orders from Judge Metcalf indicating that this case was likely subject to dismissal, all of which were styled as OSCs and never resolved, the previously ordered stay of pending deadlines to allow the Court time to screen the SAC pursuant to § 1915 was particularly warranted.  In a related vein, the Court had discretion,

---

[8]    Although section 1915 largely concerns prisoner litigation, section 1915(e) applies to all IFP proceedings.  *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

1   upon case reassignment, to adopt a new process for accomplishing that screening.  *United*

2   *States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984) ("The doctrine of law of the case .

3   . . expresses only the practice of courts generally to refuse to reopen questions formerly

4   decided, and is not a limitation of their power.").

5   I.    Legal Standard

6        Under 28 U.S.C. § 1915(e)(2), a complaint is subject to dismissal if it contains

7   claims that are "frivolous or malicious," that "fail[] to state a claim upon which relief may

8   be granted," or that "seek[] monetary relief against a defendant who is immune from such

9   relief."  *Id.*  "A case is malicious if it was filed with the intention or desire to harm another."

10  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (cleaned up).  A complaint "is

11  frivolous where it lacks an arguable basis either in law or in fact," such that "§ 1915(d)'s

12  term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal

13  conclusion, but also the fanciful factual allegation."  *Neitzke*, 490 U.S. at 325.  "Section

14  1915(d) is designed largely to discourage the filing of, and waste of judicial and private

15  resources upon, baseless lawsuits that paying litigants generally do not initiate because of

16  the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits

17  under Federal Rule of Civil Procedure 11."  *Id.* at 327.  "To this end, the statute accords

18  judges not only the authority to dismiss a claim based on an indisputably meritless legal

19  theory, but also the unusual power to pierce the veil of the complaint's factual allegations

20  and dismiss those claims whose factual contentions are clearly baseless," such as "claims

21  describing fantastic or delusional scenarios."  *Id.* at 327-28.

22       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

23  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

24  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible

25  "when the plaintiff pleads factual content that allows the court to draw the reasonable

26  inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining

27  whether a complaint states a plausible claim for relief [is] . . . a context-specific task that

28  requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at

679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

Additionally, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  On the other hand, "[i]f the pleading contains prolix evidentiary averments, largely irrelevant or of slight relevance, rather than clear and concise averments stating which defendants are liable to plaintiffs for which wrongs, based on the evidence, then . . . the very prolixity of the complaint [makes] it difficult to determine just what circumstances were supposed to have given rise to the various causes of action."  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  Rule 8 requires "simplicity, directness, and clarity," such that a defendant should easily be able to determine "what he is being sued for."  *Id.*

The Ninth Circuit has instructed that courts must "construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  Conclusory and vague allegations, however, will not support a cause of action.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  A liberal interpretation may not supply essential elements of the claim that were not initially pled.  *Id.*

II.    Factual Allegations In The SAC

The SAC alleges that "[b]eginning in early 2023, [Plaintiff] began improving roads . . . near his property . . . by personally funding gravel improvements."  (Doc. 115 at 2.) On March 23, 2023, Defendant Deputy Thomas Pacl of the ACSO "issued verbal warnings to [Plaintiff] about allegedly obstructing a public thoroughfare."  (*Id.* at 3.)  On December

1, 2023, Plaintiff "was formally cited under A.R.S. § 28-873 for obstruction of a public thoroughfare." (*Id.*)

On April 17, 2024, non-party County Engineer Ferrin Crosby "submitted a notarized affidavit falsely asserting that [the roads] were public roads." (*Id.*)

Plaintiff was a defendant in a misdemeanor court proceeding in Round Valley Justice Court, over which Judge Gunnels presided, and during this proceeding, "no ADA accommodations were provided." (*Id.*)[9]

On June 5, 2024, Judge Gunnels "purportedly appointed" non-party Bryce Patterson as Plaintiff's counsel without his consent. (*Id.* at 4.)[10] Round Valley Justice Court Clerk Alana Castillo thereafter prevented Plaintiff from directly filing motions because he was represented by an attorney. (*Id.*)

On October 15, 2024, Judge Gunnels sentenced Plaintiff to jail for 30 days and "then after intimidation" reduced the sentence to a $750 fine to be paid within 24 hours or the jail sentence would be reinstated. (*Id.*)

On December 4, 2024, Judge Gunnels held a contempt hearing and held Plaintiff in contempt "based solely on disbelief of [Plaintiff's] cancer-related speech disability." (*Id.*)

On December 17, 2024, Judge Gunnels issued a bench warrant for Plaintiff, allegedly to retaliate against Plaintiff for filing this action. (*Id.*)

III.    <u>Legal Claims</u>

The SAC includes a hodgepodge of legal claims, seemingly numbered with Roman numerals (Counts I-X), but then the numbering begins anew, and there is also Arabic numbering, and in short, it is not easy to sort out who is allegedly liable for what—the three pages of factual allegations are followed by 25 pages setting forth the various legal claims. (*Id.* at 5-29.) The claims include, at a minimum, ADA violations, First Amendment violations, violations of due process under the Fourteenth Amendment, Sixth Amendment

---

[9]  This allegation contradicts the original complaint, which alleged that a clerk was assigned to read Plaintiff's written notes aloud at during the trial. (Doc. 1 at 4.)

[10]  This allegation contradicts the original complaint, which stated that "Plaintiff requested legal counsel multiple times, anticipating potential jail time from the misdemeanor charge," but Judge Gunnels denied these requests. (Doc. 1 at 3.)

violations, criminal extortion, "invasion of privacy/unlawful disclosure of medical information" (styled as a Fourteenth Amendment substantive due process violation), Fourth Amendment violations, "obstruction and retaliation against a federal litigant" pursuant to 18 U.S.C. § 1513(e), conspiracy under 42 U.S.C. § 1983, *Monell* liability against Apache County, defamation, and potentially a few other claims for criminal violations. (*Id.*) As discussed below, it does not appear necessary to sort through the disordered slew of claims because the SAC is subject to dismissal for more overarching reasons.

IV.    Analysis

As a preliminary matter, "where factual allegations in an amended complaint are inconsistent with facts alleged in a prior complaint, a court need not accept the new allegations as true." *Howard v. Cnty. of Kern*, 2025 WL 708641, *5 n.5 (E.D. Cal. 2025); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325 (Fed. Cir. 1998) (district court did not abuse its discretion in rejecting as "false and sham" allegations in amended complaint that directly contradicted earlier filed complaint). As such, the allegation in the SAC that "no ADA accommodations were provided" during the misdemeanor proceedings over which Judge Gunnels presided (Doc. 115 at 3) is struck.

At any rate, "[j]udges are immune from damage actions for judicial acts taken within the jurisdiction of their courts. [Section 1983] was not intended to abolish the doctrine of judicial immunity. Judicial immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (cleaned up). A contempt proceeding is a judicial act within the jurisdiction of the court. *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990). This judicial immunity extends to Round Valley Justice Court Clerk Alana Castillo, as the only allegation pertaining to her is that she prevented Plaintiff from directly filing motions because he was represented by an attorney appointed by Judge Gunnels. *Lathus v. Cnty. of Apache*, 2024 WL 3091181, *3 (D. Ariz. 2024) (judicial immunity

extends to court staff acting on behalf of the court).[11]

More broadly, federal courts "have no power to resolve claims brought against state courts or state court judges acting in a judicial capacity." *Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024). Such claims are barred by Eleventh Amendment immunity, which is "a threshold jurisdictional issue." *Id.* The "prohibition applies when the state or the arm of a state is a defendant." *Id.* at 980 (cleaned up). State courts, including the superior courts of a state's various counties, municipal courts, and justice courts, are arms of the state, protected from suit by Eleventh Amendment immunity. *Id.* (superior courts); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (municipal courts); *Appolon v. The*, 2017 WL 11490686, *4 (D. Ariz. 2017) (superior, municipal, and justice courts).

Furthermore, Round Valley Justice Court is a non-jural entity that cannot sue or be sued. *Kelly v. Pima Cnty. Just. Ct.*, 2010 WL 2605804, *2-3 (D. Ariz. 2010) (justice courts are non-jural entities).

ACSO is also a non-jural entity. *Cf. Braillard v. Maricopa Cnty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010) ("Although A.R.S. § 11–201(A)(1) provides that counties have the power to sue and be sued through their boards of supervisors, no Arizona statute confers such power on MCSO as a separate legal entity.); *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015) ("After *Braillard,* it is now clear that MCSO has improperly been named as a party in this action.").

The only factual allegations in the SAC pertaining to Deputy Thomas Pacl are that (1) he issued warnings to Plaintiff that Plaintiff's road-improvement activities violated A.R.S. § 28-873, which prohibits the obstruction of a public thoroughfare, and then, when those warnings were not heeded, issued Plaintiff a misdemeanor citation for the continued violation, and (2) he testified that Plaintiff could "clearly talk," based on his interactions with Plaintiff. (Doc. 115 at 3, 17.) To the extent Plaintiff asserts a malicious prosecution

---

[11]    Moreover, the conduct alleged as to Ms. Castillo does not state a claim for any cause of action.

claim against Pacl, that claim fails because "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Because Plaintiff alleges that he was convicted, any § 1983 damages claims "that necessarily require the plaintiff to prove the unlawfulness of his conviction" are barred. *Id.* at 486. The allegations as to Pacl support no other kind of claim.

Buried on page 26 of the SAC is a claim against Apache County, a Defendant not named in the caption of the SAC. (Doc. 115 at 26-27.) But the facts alleged do not support a claim for *Monell* liability. "In order to establish liability for governmental entities under *Monell,* a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (cleaned up). "[L]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "[A]lthough *Monell* claims may have been subject to a lesser pleading standard before *Iqbal* and *Twombly* were decided, it is now well established in the Ninth Circuit that a plaintiff seeking to assert such a claim must allege *facts* that would support the existence of the alleged policy, practice, or custom." *Warren v. Penzone*, 2023 WL 7686666, *6 (D. Ariz. 2023); *see also Dougherty*, 654 F.3d at 900-01 ("Dougherty's *Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*. . . . The Complaint lacked any factual allegations regarding key elements of the *Monell* claims . . . ."). In this case, Plaintiff has failed to allege facts that plausibly suggest there has been any constitutional violation, so the *Monell* claim fails to meet any of the four required elements.

The analysis above disposes of all claims in the SAC. For that reason, it is unnecessary to discuss the Rule 8 violations or the frivolousness of the claims. However, the Court notes that § 1915(e)(2) also authorizes dismissal of actions that are "malicious," including litigation that is "plainly abusive of the judicial process or merely repeats pending or previously litigated claims" or involves "abusive pleading practice where multiple motions are filed asking for the same relief and the plaintiff does not wait for a response from the court before filing the same motion again." *Scott v. Weinberg*, 2007 WL 963990, *13 (W.D. Wash. 2007). The Court finds that this action is malicious and is subject to dismissal for that reason, in addition to the many other reasons set forth in this order.[12]

V.    Leave To Amend

"Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (internal quotation marks and citation omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

It is absolutely clear the complaint could not be cured by amendment. Plaintiff has already had the opportunity to amend once, following the issuance of multiple § 1915 screening orders identifying various deficiencies in the original complaint. Moreover, Plaintiff has already had a previous lawsuit based on many of the same facts and issues dismissed pursuant to a § 1915 screening.

VI.    Final Matters

On July 16, 2025, the Court issued an order denying a slew of motions filed by Plaintiff, which among other things sought the undersigned judge's recusal and the entry of default or default judgment against Defendants. (Doc. 128.) The order explained that the recusal requests were frivolous, that the default-related requests were unfounded, and

---

[12]    These conclusions make it unnecessary to address the *Younger* doctrine, which Judge Metcalf identified as a potential additional basis for dismissal. (Doc. 57.)

1   that Plaintiff could face sanctions if he continued filing such motions.  (*Id.*)

2       That warning apparently went unheeded, as Plaintiff has now filed more recusal

3   requests (Docs. 131, 147); more default-related motions (Docs. 130, 142); more

4   reconsideration requests (Docs. 129, 141); another request for injunctive relief (Doc. 143);

5   a motion for sanctions (Doc. 140); and an array of "notices" (Docs. 132, 133, 134, 137,

6   138, 139).  Those motions are denied for the reasons stated in the July 16, 2025 order.

7   Although Plaintiff clearly disagrees with certain rulings by the undersigned since this case

8   was reassigned, such disagreement does not give Plaintiff a license to inundate the court

9   with a barrage of repetitive motions and notices, particularly after being warned that this

10  conduct must stop.

11      As for Plaintiff's recently filed "motion to strike sua sponte vacatur of operative

12  complaint, to reinstate original complaint as controlling pleading, and to enforce default

13  and Rule 8(b)(6)" (Doc. 148), this motion appears to fault the Court for *granting* Plaintiff's

14  motion for leave to file the SAC.  Putting aside that this criticism is barred by the invited

15  error doctrine, vacating the SAC at this juncture and reinstating the original complaint

16  would do nothing to change the outcome—the original complaint is subject to dismissal

17  without leave to amend for the same reasons as the SAC.

18      Finally, as for Plaintiff's recently filed notice of appeal (Doc. 144), that filing does

19  not divest this Court of jurisdiction to address the matters being resolved in this order

20  because it was premature.  *Mondrow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989)

21  ("Unlike a timely notice of appeal, a premature notice of appeal does not divest the district

22  court of jurisdiction."); *Pengelly v. Hawaii*, 2017 WL 5617064, *2 (D. Hawaii 2017) ("A

23  premature appeal does not divest this court of jurisdiction.") (citation omitted).

24      …

25      …

26      …

27      …

28      …

Accordingly,

**IT IS ORDERED** that the pending motions (Docs. 129, 130, 131, 140, 141, 142, 143, 147, 148) are **denied**.

**IT IS FURTHER ORDERED** that the SAC (Doc. 115) is **dismissed without leave to amend**.  The Clerk of Court shall terminate this case.

Dated this 15th day of August, 2025.

_____
Dominic W. Lanza
United States District Judge